normal psychological and psychosexual development be derailed by a monstrous father. The humanity, in our opinion, was missing from Judge Bianco's sentence. If you have no further questions, I'll sit down. Thank you very much. We'll reserve decision. Next case on the calendar is Chavez v. Occidental Chemical Corporation, No. 181120. Good morning, Your Honors. It is undisputed. Can I ask you, I think it's a question to be asked at the outset because it's a little unusual. The question here at the forefront seems to me to be whether we should certify the question to the New York Court of Appeals. Let me ask, because that makes it, what I want to test, find out if I'm right, is that makes this unusual because normally we would first, if we knew that we didn't have to certify, we would first look at whether New York adopts cross-jurisdictional tolling, class tolling. And then if it did, we would decide whether it applies here. What makes this a little different is that in order to certify, we have to certify to the New York Court of Appeals that the case depends on their answer, which suggests that maybe in this case we do it, are required if we decide to certify, we're required to do it backwards, which is to say first to decide whether it matters, whether cross-jurisdiction as tolling matters. And only if we decide, yes, it does matter, do we go and certify to the Court of Appeals. Am I making myself modestly straight? It's different from the usual one. If we have to certify to the New York Court of Appeals that everything hangs on their response. I think that that's right in the sense that they have to prevail on both issues, both whether there is cross-jurisdictional tolling and whether it's warranted in this case. I mean, both could, in theory, be certified to the Court of Appeals. But I think that the second issue doesn't warrant certification, both because, as the Court said in Gutierrez, 702. Sotomayor, you're right. But my point is that we still would have to decide that second one, even if it doesn't work, especially if it doesn't require certification. We'd have to decide that one before we certify, because we'd have to cert when we certify, we would have to certify to the Court of Appeals that the whole case hangs on their decision. That's correct. The first issue is not outcome determinative unless warranted. Right. Certification, unless tolling is warranted on the facts of the case. But are you saying that the New York Court of Appeals also might want to articulate a standard as to when the termination of a reasonable reliance on dependency of a class action occurs? They're somewhat interrelated, you know, whether cross-jurisdictional tolling is recognized in the State of New York, as well as if it is when termination of reasonable reliance occurs. So those together are dispositive. I mean, Judge Sack has laid it out in a sequence. But one might conceive of it differently. Or do you think that that would be – certification of both of those questions is inappropriate? I think that certification of both is inappropriate, because the second issue about tolling, for two reasons. First, because it is intensely factual. And the Court indicated in the Gutierrez case, 702 of 3rd at 117, that when the question is so intensely factual that certification may be inappropriate, with the idea being that, you know, this particular state of affairs is not of importance to the State of New York. And as the plaintiffs' counsel said in front of the Eastern District of Louisiana, this case is one in a million. The facts are so, as Judge Unkelmeyer said, baroque. And secondly, I think certification on that second issue isn't warranted, because I think you can say with some certainty what the outcome is under the Lichy v. Lebanese Canadian Bank standard. When you can say with some certainty, you don't need to certify it. And I think you can say with some certainty because both the law just does not favor them and because I think the facts of this case are so clear that they had no duty, that the named plaintiffs had no duty to protect the absent class members. As far as the law goes, you have not only the cases that have addressed this matter, specifically the facts of this case, the Eastern District of Louisiana, affirmed by the Fifth Circuit, and Hawaii. But also just the kind of more generic cases where cases were dismissed or certification was denied without prejudice to reinstatement. There are two of those cases that Giovaniello relied on. I think the answer is clear from Giovaniello itself, which says it ends when certification is denied. But if you look at two of the cases they relied on the most were Bridges from the Fourth Circuit and Andrews v. Orr out of the Sixth Circuit. Both of them involved denial without prejudice to reinstatement. It was especially forgiving in Bridges because they said all you have to do there and we'll reinstate the claim is file your reply brief. But the Fourth Circuit said even that's not enough. The absent class members are relying on people who don't have any obligation to do that. They don't have to come back and file that. And because of that, they said tolling was no longer appropriate. In Andrews v. Orr, after certification was denied without prejudice, the plaintiff's lawyer said I'm going to file a second certification motion. And the Sixth Circuit there said it doesn't matter what he says until that second motion is filed and the clock is still running. And I think because of that, the only thing they have in their favor, the only court going in their favor is saying that this kind of potential refiling or potential revival is enough is Delaware. But Delaware is in many ways the anti-New York. In New York, it's overall versus the state of clots and McCarthy versus Volkswagen of America. They say you can strew tolling as narrowly as possible. But if you look at Delaware, this is from Marquinez, 183A3rd at 709, quote, Delaware law favors broad tolling principles, unquote. You could search New York law in vain and never find a statement like that about New York law. In addition, Delaware, they adopted or they rejected the standard that both parties say is appropriate here, the objective reasonableness standard. They rejected that standard there in favor of what looks like a standard that you've got to have a ruling on the merits. What they said there was it keeps running until the court ends the class action as a final matter. And because they criticized the Texas District Court for not getting to the merits, that looks an awful lot like the clock keeps running until they say tolling ends as a final matter. That's never been the, you know, you can't find a case in New York that says tolling goes that far. And so I think the law is going to be a real problem with them, and I think that's one reason why the court doesn't have to certify that. As a factual matter, I think you can say the facts are bad for them because you can just look at their conduct and know that they didn't have a duty to file for reinstatement. For a seven-and-a-half-year period from October of 1995 when the class, when the court dismissed the case and marked the docket case closed, for a seven-and-a-half-year period until I think May of 2003, they filed one motion for reinstatement, which was denied in February of 1997. What's your response to the characterization of the plaintiffs of that October 1995 judgment as equivalent to a stay given the opportunity to return and reinstate the action as if it had never been dismissed? I mean, that pendency puts a different gloss on the judgment rather than a clean termination, doesn't it? I think that's hard to maintain after Norwood v. Kirkpatrick, which said that after an FNC dismissal, it starts the clock running again on statutes of limitations. The Supreme Court held that. I mean, that was I think in the 40s or 50s, so that's been kind of a prevailing view of FNC dismissals for a long time. But it wasn't. Go ahead, please. I'm not sure I understand where, as here, the dismissal does not end the class action. Quite the contrary, it assumes that the class action will be brought in a different forum. So to the extent that the concern here is whether class members would have relied on the class action or had no reason to do so, I'm not sure how these circumstances would allow the conclusion you're urging. Well, because, again, in the words of Giovaniello, the class representatives, the named plaintiffs, were under no duty to represent the absent class members that entire time. They were under no obligation to file suit in Costa Rica. They were no longer under obligation, much less as a class action, even assuming it were possible to do so. And Judge Lake indicated some real skepticism about that. And as it happens, it wasn't maintained as a class action in Costa Rica. It was an individual action. Once that was denied, I mean, the court didn't even confront, you know, what happens if it goes to judgment abroad? What if it is dismissed for reasons not having to do with jurisdiction, which wouldn't allow them to return? What if it's settled like the Panamanian plaintiffs settled? Well, to the extent we agree that New York can recognize cross-jurisdictional class action tolling or not, as it wishes, why wouldn't it be part of any certified question to ask it whether it recognizes it, and specifically whether it would recognize it in these circumstances, whether it thinks that the dismissal here would be enough to preclude class member reliance? Well, because I think, again — I mean, the court might very well answer the question in your favor. I am just asking why we shouldn't view that as all something that New York should tell us how it wants it treated. Because I think you can look both at the facts of this case and at the law of New York and say there's really just no basis for looking at the law and seeing them tolling under circumstances anything like this. Instead, you have not only the dismissal without prejudice, but you have all the other courts that have addressed the facts of this case, the Fifth Circuit, again, which knows these FNC dismissals and the return jurisdiction clauses, and also the Hawaii law. And, I mean, you can't look at any particular case and say where there was a possibility of return that's ever been enough for New York in the past. So if we decided New York law in your favor, second question. Second question. Excuse me. Then we wouldn't have to certify at all because the case would be over. It doesn't matter. That's correct. That's correct. And I do think that it is clear enough that the district court erred in this case that these plaintiffs, the named plaintiffs, not only did not have the duty to represent the absent members, but they didn't. You know, by 1997 and 1998, that settled most of these claims, individual claims. And if you look, in 1995, after 1995, and up to October of 1997, when the statute was about to run in Hawaii, you know, literally thousands of other absent plaintiffs filed claims, including some represented by plaintiffs' counsel here who filed in Hawaii just as the two-year statute of limitations was about to run in October of 1997, two years after the dismissal in October of 1995. Thank you very much. We'll hear from Mr. Massey. And you have reserved three minutes rebuttal, Mr. Elwood. Good morning, Your Honors. May it please the Court, Jonathan Massey for the plaintiffs' appellees in this case. Our position is that we don't object to certification. We think Your Honors could certify both questions to the New York Court of Appeals if you wish. That's what the Third Circuit did in certifying basically the second question to the Delaware Court of Appeals. That produced the Marquinez opinion, which reviewed the same record as Judge Engelmeyer and came to the same conclusion. But we also think we're quite confident, frankly, in our position on New York law, and we have no objection to your deciding both issues. We think, contrary to my friend, of course, that the issues are clear in our favor and that New York tolling principles are nowhere near as— I just think my only real problem with certifying both at the moment sitting here is there's just—we're dealing with the State's highest court, and we don't want to ask them to do things for us unless we have to ask them to do it for us. I understand. I understand. I'm just pointing out that the Third Circuit did that to Delaware. Absolutely. But I—the second—so let me focus on the second question some, then. I'm also happy to talk about the first. With all respect, I think it's quite clear that there was—that Judge Engelmeyer was right, and to the extent that we think this was an intensely factual record with a lengthy procedural history, I would think that Judge Engelmeyer's views would be persuasive. The facts here are baroque, but— So what in particular would have made it reasonable for plaintiffs to rely on the expectation of representation by the other groups after the dismissal, even with the return jurisdiction? What in particular? So the—because the matter continued pending before Judge Lake. He said, and this is on page A60 of the appendix, that he was intended to reserve jurisdiction over the matter so that even after the FNC dismissal, there was a return jurisdiction clause that promised that the case would be reinstated as if it had never been dismissed. So what if all the plaintiffs had gone away and never come back? Well, because partly the answer is my friend's reliance on the Bridges case. The Bridges court looked to the overall conduct of the litigation. What happened here was that the plaintiffs told Judge Lake before he imposed the FNC dismissal, the forum forms are inadequate. They're going to find under this doctrine of preemptive jurisdiction that they lack jurisdiction, and we will be back. And they were back within six months. Actually, just over five months, a motion for reinstatement was filed before Judge Lake. And so everybody knew— But when you say they, they were subsets, right? Well, the Costa Rican plaintiffs. Of course, there wasn't — it's true that only the Costa Rican plaintiffs filed for reinstatement. But, for example, the lead— But those plaintiffs were also free to settle individually if they wanted to, right? Well, but they continued — the case continued as to be captioned and treated as a class action, as a putative class action, without any geographical subdivisions. The class definition included plaintiffs from Ecuador and Panama and everywhere else. The Plaintiff Carcamo, the lead plaintiff, was from Guatemala. So nobody— Does it still include Costa Rican plaintiffs? In today, yes. Our case before Your Honor today— In that case, my question then would be, does it matter? That is to say, can't — if that's right, we go on, can it be up to the district court on remand, whether it's just Costa Rican plaintiffs or it's the whole class? Do we have to decide that now? Well, Your Honor, no. But I think Judge Engelmeyer rejected their arguments that it was limited to Costa Rican plaintiffs just as Judge Lake rejected their argument in 1995 — or in 2004, I'm sorry — that it was limited to Costa Rican plaintiffs. He did not require that only — that other — that plaintiffs from other countries would need to file. At page 863 — I'm sorry, 863 of the Joint Appendix, Judge Lake said that if you need — that other — that the defendants could raise the argument in the State courts as to whether non-Costa Rican plaintiffs needed to file, they did that in the State courts. The State courts rejected their arguments, as did Judge Hoyt, who's also on the — on the Southern District. So the defendant's position has to be that not only was it unreasonable, objectively unreasonable, for the plaintiffs, the absent class members, to rely on the class action, it was also, in some sense, objectively unreasonable for the State courts of Texas and for Judge Hoyt to understand that this class included non-Costa Rican plaintiffs. I mean, the one answer to Your Honor about why was this reasonable is, that's actually — it turned out, in fact, that this case continued to be captioned and treated as a class action. So I think it's hard to say it was objectively unreasonable for the absent class members to expect that in October of 1995. That's exactly what turned out to be the case. It continued to be treated as a class action. And it was the same case in the other two critical subdivisions. It was — Judge Lake remanded the cases as entire — by their civil action numbers. Am I right in understanding that the Fifth Circuit kind of requires this of its district courts on FNC dismissals, that you're always supposed to put in a — you know, Andrew can come back if you can't get jurisdiction elsewhere, some kind of language to that effect in its order. Is that right? Well, they typically do. I don't — I don't — can't represent that it's 100 percent, but — That was my understanding from — It's typically done. That's right. And I think Judge Lake understood that. He understood it or his orders better than anyone. He understood that, you know, that he had not meant to dismiss without — he said the final judgment was final for only limited purpose of permitting an appeal. It did not extinguish his — his continuing jurisdiction. It's true the case was marked closed, but if you look on PACER, there were 100 entries after October of 1995, stretching into 2004. The case was active. It was treated as active. But my concern still is that if the absent — if the plaintiffs who were dismissed and told to go to other jurisdictions did not proceed, if they abandoned their claims, if they settled individually, I don't see what the source of any ongoing obligation to the absent class members was. And absent that, I don't understand how it would be reasonable for the absent class members to rely on the pendency on the docket sheet of — Because — because these class reps, these putative class reps were not settling and giving up. Those plaintiffs remained, and there were independent Costa Rica intervenors, which ultimately — those intervenors are in the record. And I can — But, no, so that's not the answer. What's the source of their obligation to go forward? They continue to represent the putative class. They continue to — the case continued to be captioned as a putative class action. They had told — they had — So they had ethical obligations because they were named in the caption as class representatives in Texas to pursue actions elsewhere around the world. Is that — is that what you're saying? Well — Ethical. They — they — they — they and their counsel had continued to prosecute this as a putative class. Both the plaintiff intervenors, who my — my colleague at the table has represented throughout 2010, and the remaining class members, the remaining class reps, had told Judge Lake, we will be back. And the case did come back within five months. I don't think that this was a surprise by anybody. This was exactly what the plaintiffs predicted was going to happen. And that's — and Judge Lake understood that. That's why he said this is — the motion to reinstate is a direct continuation of the prior proceedings. It wasn't — Your Honor's hypothetical could lead to a different result. If people were — were — were — were — were not — not — had not filed a motion for reinstatement if it had not — you know, different facts makes different cases, and I acknowledge that the facts here are unusual. But it's also not true that thousands of people were settling and dropping out. There — the — the — the episode my colleague referred to in Hawaii represented included 10 — 10 plaintiffs who filed a putative class action in Hawaii. If Your Honors look at the — there was an episode in Florida that involved 3,300 plaintiffs, but they did not drop out and file separate actions. They filed — and this is in the — in the appendix at page 314, 1190, and 1219 to 1221. There were 3,300 people who misinterpreted the scope of Judge Lake's injunction. And he later clarified he had not meant to enjoin all DBCP litigation. So they filed a temporary placeholder action in Florida, which they dismissed before it was served. And then the remain — they basically were demonstrating their continued reliance on the Carcamo-Delgado class action. So — and Judge Engelmeyer and the district court and the — and the Supreme Court of Delaware heard all of this. These are all just rehashed arguments, and as did the State courts in — in Texas and Judge Hoyt on the — on the Southern District of Texas. So I believe the only way to say that it was unreasonable for the absent class members to continue to rely on the — on the case would be to say that all these other judges were objectively unreasonable in their understanding that the — and Judge Lake was unreasonable in saying that the prior — that the motion to reinstate was a direct continuation of the prior proceedings. The — the G. V. Anello case is — was a case where the — is a perfect and dismissed for lack of subject matter jurisdiction. That's a plain — it's a clear, unambiguous ending of the case. This case is the opposite because Judge Lake did not dismiss for subject — for lack of jurisdiction. He said that he was continuing to exercise jurisdiction over the case. That's what he said in — on page A60 of the — of the appendix. So the — the other — some of the other comments that your — I think Your Honor is right, that an FNC dismissal could be treated as being equivalent to a stay. The Delaware courts have used that analysis to say that — and, of course, the Supreme Court has said that the FNC dismissal is not a decision on the merits. It doesn't end the case forever. That's what Judge Engelmeyer pointed to as well. The — the FNC dismissal simply actually contemplates that there will be further proceedings in the case. It's different from a complete dismissal on the merits. The notion that Judge — that New York law is — is harsh and unyielding, I think, is also incorrect, that New York law — we cite the case of the American Home Insurance against the American Home Products case, the Supreme Court in 1990 — according to the Court of Appeals in 1990, which rejected the argument that New York couldn't look to — that New York had a duty to examine the — the validity of a punitive damage verdict in Illinois. The Court said there we will — we will defer to the proceedings in other States. The — it's uncontested that — that the CPLR-2005 subsection A is — has been applied cross-jurisdictionally by New York, and that can lead to very long tolling periods in — or very long extensions of the New York statute of limitations. For example, there — the Court of Appeals had a case in 2014 called Norex Petroleum that led to a nine-and-a-half-year extension of the New York statute of limitations because the federal class action had gone on forever. And so that led to an extraordinary delay in the application of the New York statute of limitations. The Court of Appeals had no problem with that. Some of the cases that my friend has relied on, like the Vero against Avis case, which is a New York State case that they — they claim says that New York has a very harsh treatment approach to the statute of limitations, it says the opposite. It says that there have been tolling when the — when equity requires. So for all these reasons, we're not opposed to certifying only the first question. We're not opposed to Your Honors deciding the first question. We think New York would adopt cross-jurisdictional tolling. We think that the — that the reasons that we've given in the briefs are persuasive on that point. We also think the second question should also be decided in our favor. We, again, understand that the — the reluctance, perhaps, to second — to certify the second question. Kennedy, you have no reluctance for us to do that. We have no reluctance. We — we — we know that — I mean, whether or not there's a lot of reasons saves time, but — Right. We think that this is a Baroque record. Judge Engelmeyer went through a lot of work. And, frankly, we think his handiwork is impressive. And so we think Your Honors could decide the second question and then certify the first or decide both. Thank you. Thank you very much. Mr. Elwood. Just a couple of points. Principally, to consider what the return jurisdiction clause did, all it said was that the court retained jurisdiction to entertain things that might be filed in the future. It didn't impose any burden on the class representatives or the class — named plaintiffs to actually return and do anything. And as it happens, if you look at it, the case that Mr. Massey cited, J.A. 863, said precisely that, that, you know, the Costa Rican plaintiffs have returned, and maybe other — someday other plaintiffs will seek to do it, too. But we know already that the Panamanians settled down in Panama. We know the Nicaraguans have returned. Nobody else ever returned other than these Costa Rican plaintiffs, who overwhelmingly settled all their claims. They actually settled all their claims by 2006. And even though they — No. So I think your adversary would say that it remained open on the docket. The — in fact, proceedings began again within five months after the termination motion. And why wouldn't a person removed from those be entitled to rely on that? Because it was also denied — the motion to reinstate was denied by February of 1997. And it continued to — they never again asked for it to be reinstated. It was never reinstated, because by May of 2003, many years later, they ultimately moved to set aside the FNC dismissal. But what you have then is a seven-and-a-half-year period where it sat saying case closed and where they didn't ask for — they didn't take any action with respect to it in order to move it along to try to return the case. And I think, you know, if you look at the case, they never had a duty to do any of that stuff, to go to the other countries to return here. And the fact of the matter is that although there was a return jurisdiction clause, so they resumed jurisdiction over it, all it said was, we'll resume jurisdiction as though nothing happened. It didn't reinstate the class action. And sure, it may have been captioned as a class action, just like Bridges was, just like Andrews v. Orr was, but the certification motion had been denied. And from that point on, you can't look — there's no other case aside from Delaware where you have a case where certification has been denied to just sat, where a court has said, yeah, tolling's appropriate there. Thank you. I think we have the arguments well argued.